STATE OF IOWA ex rel. J. W. SCHNOOR, Appellant, v. CONSOLI-
DATED INDEPENDENT SCHOOL DISTRICT OF DAWSON
et al., Appellees.

**SCHOOLS AND SCHOOL DISTRICTS:** Districts—Parol Evidence.
Whether parol evidence is competent to establish the formation of
a subdistrict, in the absence of a showing that a record of such
formation did exist at one time, *quaere;* but evidence reviewed, and
held quite insufficient to show such formation.

*Appeal from Dallas District Court.*—LORIN N. HAYS, Judge.

MARCH 7, 1922.

ACTION in quo warranto, in which relator asked that the
organization of the consolidated district be declared illegal and
void, and that it be dissolved, and that the individual defendants
be decreed to be unlawfully exercising the powers of their official
positions. Trial to the court. Finding and judgment that the
district had been legally organized, and that the other defend-
ants may lawfully exercise their positions as officers and direc-
tors of the district. Relator's petition was dismissed, with judg-
ment for costs. Plaintiff appeals.—*Affirmed.*

*W. H. McHenry* and *Corwin R. Bennett,* for appellant.

*W. H. Winegar, George J. Dugan,* and *White & Clarke,* for
appellees.

PRESTON, J.—For a better understanding of the situation,
we attach part of a plat which was introduced in evidence, show-
ing the consolidated district, the independent district of Daw-
son, and Section 2, outside the district.

The heavy, irregular line near the top represents Raccoon
River. The territory petitioned for and established as defendant
district is composed of Sections 3 to and including 22, in Dallas

County.   It includes the town of Dawson.   Territory from four subdistricts, Nos. 1, 2, 5, and 6, is included.   About October 1, 1870, the district township of Dallas was subdivided by the board of directors into subdistricts, each containing four sections, and being two miles square.   These subdistricts are Nos. 1, 2, 5, and 6.   A plat so showing was certified by the secretary of the school board, and filed and recorded in the office of the county auditor, October 25, 1870.   This plat was offered in evidence, and is here set out.

| 6 SUB DIST. #1 | 5 | 4 SUB DIST. #2 | 3 |
|---|---|---|---|
| 7 | 8 | 9 | 10 |
| 18 SUB DIST. #6 | 17 | 16 SUB DIST. #5 | 15 |
| 19 | 20 | 21 | 22 |

The plat shows the entire district of Dallas, but we set out only so much as includes the territory and subdistricts included

in the defendant consolidated district. Appellees contend that there was never any change in the subdistricts of this township until the Dawson independent district was established, and later, when the defendant consolidated district was established. If this is so, and the districts composing the consolidated district extend north to the congressional line, there was no division of independent districts, as contended by appellant. Appellant claims, and sought to show by parol evidence, that there was a change about 1892. In argument, appellant states his claim thus: That, in 1892, a subdistrict was established north of the Raccoon River, including parts of Sections 2, 3, 4, and 5, as shown on the first plat set out herein; that later, Subdistrict No. 10, north of the river, was changed to Subdistrict No. 2; that the establishment of the consolidated independent district left the remaining portions of Subdistrict No. 2 (formerly No. 10) without access to any school, and so situated as not to be suitable for the formation of a school township.

If they have established their claim by parol evidence, then we take it that the claim is that, in establishing the defendant consolidated district, territory was not taken in which included a part of the so-called former District No. 10, thus dividing said district, and omitting Section 2 from the consolidation. Relator owns land in Section 2. The residence building on relator's land is north of the river, and in Section 2, outside the defendant district. The north line of Sections 2, 3, and 4 is the north line of Dallas County and Dallas Township. Greene County is adjoining on the north. At one time, an additional schoolhouse was built, north of the river and near the section line between Sections 3 and 4. Appellant alleges that the organization of defendant district was illegal because, in the formation of the district, the lines thereof did not conform to the boundary lines of Subdistrict No. 10, which, as he alleges, was subsequently changed to Subdistrict No. 2. Relator also alleged that, by the consolidation, Dallas Township was so divided by the boundary lines of the consolidated district that it left a part of Section 2 without any school facilities, or contiguous and so situated as to form a suitable school corporation.

The answers of the different defendants deny plaintiff's claims, and allege that the district was legally established. The

answer also pleads that defendants offered to furnish relator school facilities in said district, and to transport his children of school age in the same manner as other children in the district, and that they still so offer. The defendants claim that, in so far as school facilities are concerned, this is a matter for the school authorities, and that plaintiff should appeal to them. In the reply argument, appellant states that he does not now claim any relief in this case for the deprivation of school privileges, but only for the jurisdictional defects in the establishment of the consolidated district.

The principal controversy is whether there was a subdistrict established and known as Subdistrict No. 10, and later changed to Subdistrict No. 2. Plaintiff alleges such to be the fact, and defendants deny. Defendants contend that the north boundary of 3 and 4 is the congressional line, and that there was no subdivision of the district to the north. Plaintiff's proposition, just stated, involves others: First, whether, the records having been lost, as plaintiff claims, parol evidence is admissible at all to show the establishment of subdistricts as claimed by appellant; and second, whether, if such evidence is admissible, appellant laid proper and sufficient foundation as to the loss of records, to permit the introduction of parol evidence; and further, whether, conceding the last two propositions, plaintiff has sustained the burden, and established his claims by that clear and satisfactory evidence required in such cases, and whether, therefore, the establishment of the defendant consolidated district divides the alleged Subdistricts 10 and 2, contrary to the mandatory provisions of the statute. We think appellant is, and should be, required to establish his claim by clear and satisfactory evidence, since he is seeking to overcome a record made some 50 years ago, as shown by the second plat hereinbefore set out. No appeal was taken from the county superintendent to the board of education in the proceedings when the petition for the establishment of the consolidated district was presented, or at least an attempted appeal was too late. Appellant makes no point as to this. The case was brought at law, but it was agreed at the trial that it should be tried as in equity.

Appellant cites authority that, on proof of the loss or de-

struction of, or inability to produce, a public record, secondary evidence may be admitted. When the petition for consolidation was presented, the county superintendent examined the records, and therefrom determined that the establishment of the defendant consolidated district would not divide other districts. As we understand appellant, he claims that she should have inquired of the inhabitants of the district as to the boundaries. It is somewhat doubtful whether she would be required to do this, and to make an investigation and a determination contrary to the records. But conceding, for the purposes of the case, but without deciding, that the proper foundation was laid, and that parol evidence was competent, still we think plaintiff has not established his claim by the evidence. The recollection of the witnesses, or most of them, as to what occurred along about 1892, some 30 years ago, is not clear. Several of plaintiff's witnesses give testimony tending to show that a district such as they claim, was established, but for the most part, they do not pretend to state or to know the boundaries of such a district, or that the boundaries were ever fixed, or that the alleged lost records fixed boundaries. It would be necessary for plaintiff to so show, before it could be claimed that the principal fact was established, that the consolidation divided another district or other districts. There is evidence on behalf of plaintiff tending to show the formation of Subdistrict No. 10, and that they understood that the boundary thereof on the south was the river; but for the most part, they state that they do not remember even who constituted the board of directors at that time; never saw any record of any action taken by the board. Some of these witnesses testify that they went before the school board to get a schoolhouse built for the children north of the river, and it seems that, at one time, a petition was presented, asking the board for a subdistrict north of the river. Some of the witnesses say that they do not know whether this petition contained a description of any real estate or not. They do say, however, that the board decided to build a schoolhouse north of the river, and this was done; that there were a number of children of school age living north of the river. Other witnesses say that they remember when the schoolhouse north of the river was built, and that it was sometimes called Subdistrict No. 10,

but they say they did not know it had ever been established, or what the boundaries were; that they did not know anything about the boundaries. Another witness testifies that he was one of the committee that went before the school board and asked for a school north of the river; that they were after a schoolhouse, and they got what they wanted; and that he did not know whether the board in fact organized a subdistrict, and knew nothing of the boundaries. Another witness, who was secretary and treasurer of the board at the time schoolhouse No. 10 was built, says he remembers the committee's coming before the board; that they were asking for a schoolhouse north of the river, and their request was granted. He does not recall that anything was said about the boundaries, and does not remember any fixing of the boundaries; does not recollect any record of the district township showing any boundaries. A record was produced of the school board in Dallas Township for 1895 and subsequent years, after the alleged loss of the prior record, showing expenditures for the new schoolhouse in the so-called Subdistrict No. 10. The evidence shows that teachers were hired and school was maintained there, a schoolhouse built, seats provided, and so on.

On the other hand, testimony on behalf of defendants tends to contradict the testimony of plaintiff in regard to the alleged Subdistrict No. 10. One witness who has lived in Dallas Township for 40 years, was a member of the board for a number of years, and was present at every meeting; was a member of the board at the time the parties appeared, asking for a schoolhouse north of the river. His recollection seems to be clear as to what occurred, and who constituted the members of the board. He testifies that the committee asked for a schoolhouse north of the river; that the board was compelled to build a schoolhouse; that no action was taken by the board to determine any distinct boundary; that there was nothing done at the time about the organization of a subdistrict; that, while he was a member of the board, there never was any change made in reference to the boundary of any subdistrict. The county superintendent testified that she made inquiry; looked at the records in her office and in the office of the county auditor; and found and determined that the boundaries of the consolidated district

as petitioned did not divide any subdistrict. The county auditor testified that he had searched the records in his office, and that the only record therein concerning the boundaries of subdistricts in Dallas Township was as shown on the second plat herein set out.

It would serve no useful purpose to set out the evidence of either side more in detail. The tendency of the evidence has been sufficiently indicated. We think it is more probable that, because of the river, and because certain persons lived north of the river, they desired a schoolhouse, and went before the board asking for a schoolhouse, which request was granted; and that, after the schoolhouse was built, for convenience it was designated as No. 10; and that a director was elected, representing this school, so that there would be someone to take care of it. Code Section 2801, Code of 1897 (McClain's Code, Section 2915), provides that the board of each school township may divide the district into subdistricts, and that, when it is done, it shall cause a written description of the same to be filed by the secretary with the county treasurer and the auditor, and that the boundaries of the subdistricts shall conform to the lines of the congressional divisions of land. This was done in 1870. The plat then filed, and before set out herein, is still a part of the record in the auditor's office; no other plat was ever filed of any change in the boundaries. Appellees contend that if, as claimed, the school board did form or attempt to form District No. 10 in 1891 or 1892, it could not have included the land of appellant in Section 2, because it would have been contrary to Section 2801 of the statute, since it would not have conformed to the lines of the congressional divisions of land; that it is presumed that officers perform their duties.

From the entire evidence in the case, and from the record, we think that the trial court rightly concluded that plaintiff had not sustained his claim by the evidence. Other questions are argued. For instance, it is thought by appellees that plaintiff was guilty of laches; that he waited about six months after the district was established, before commencing this suit; and that it was several months, in all about a year thereafter, before the case was tried. These proceedings were had before Chapter 211, Acts of the Thirty-ninth General Assembly, fixing a six

months' limitation for commencing suit, was enacted. The petition in this case was filed October 22, 1920. The preliminary orders were secured prior thereto, authorizing the commencement of the suit. In the view we take of the case, it is unnecessary to discuss the question of laches.

The judgment and decree of the district court are— *Affirmed.*

STEVENS, C. J., WEAVER and DE GRAFF, JJ., concur.